**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.;<br><br>Defendants. | Case No. 8:26-cv-03457-PX |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS


ARGUMENT ..... 1

I. Plaintiff challenges final agency action. ..... 1

A. The Memo marks the consummation of DHS's decisionmaking process. ..... 1

B. The Memo determines rights and obligations, and it has legal consequences. ..... 3

II. Plaintiff has standing. ..... 4

A. EPIC's injury is imminent and substantial. ..... 4

B. EPIC has associational standing. ..... 6

C. EPIC has informational standing. ..... 7

D. EPIC's claims are ripe. ..... 8

III. The Memo violates the Privacy Act and Social Security Act (Counts II, III, IV). ..... 9

A. Defendants do not dispute the Memo's substantive statutory violations. ..... 9

B. APA review and relief are available for Defendants' Privacy Act violations. ..... 10

C. EPIC is within the Privacy Act's zone of interests. ..... 12

IV. The Memo exceeds DHS's statutory authority (Count I). ..... 13

V. Plaintiff is entitled to its requested relief. ..... 15

CONCLUSION ..... 15

Plaintiff challenges a final Implementation Memo signed by the Secretary of Homeland Security approving a "course of action" to amass and disclose millions of Americans' statutorily protected personal data. Defendants do not dispute that the Memo commands them to create State Citizenship Lists and distribute them via a Portal before the upcoming midterm elections for states to "verify citizenship status."

Defendants' arguments in opposing summary judgment boil down to an assertion that it is somehow too early, and their plans too uncertain, for the Court to review the legality of their acts. This cannot be squared with their own admissions: DHS concedes both that it is currently implementing the Memo's approved course of action and that its implementation is mandatory. *See* Mayhew Decl., ECF 36-1 ¶¶ 5, 10. Defendants' arguments are also wrong on the law and betray their efforts to insulate their actions from accountability until after it would be too late. Mere weeks from the election, Defendants have declined to rescind the Implementation Memo and have reserved the right to "go live" with the Portal before the midterms—with only 48 hours' notice to Plaintiff and the Court. The Privacy Act, however, requires at least 30 days' notice before new intended uses of sensitive data. Delaying judicial review would only compound the chaos the Memo creates by inviting judicial involvement even closer to the midterms. As EPIC has presented a justiciable challenge, this Court can and should review the legality of Defendants' Implementation Memo and the course of action it approves. They are clearly unlawful.[1]

## ARGUMENT

### I. Plaintiff challenges final agency action.

#### A. The Memo marks the consummation of DHS's decisionmaking process.

Plaintiff satisfies the first prong of the test to establish final agency action. Defendants do

[1] Because of the need for expedition and because Plaintiff's motion presents pure questions of law, Plaintiff believes the Court can rule without holding a hearing on the motion. If, however, the Court wishes to schedule a hearing, Plaintiff respectfully requests that the hearing be set for the week of September 21, 2026.

not dispute Plaintiff's cited authorities demonstrating that an agency policy to disclose confidential data without sufficient notice is final agency action. Plaintiff's Memo. of Law, ECF 7-1 ("MOL"), at 8-10. The Implementation Memo, Hill Decl. Ex. A, ECF 7-3, approves such a policy—a decision on how to implement Section 2 of Executive Order 14399, which mandates the unlawful compilation and disclosure of confidential data on a prescribed timeline and without the statutorily required notice. *See* 91 Fed. Reg. 17125 (Mar. 31, 2026), Hill Decl. Ex. B ("2026 Elections EO"). Defendants seek to obscure this fact by recharacterizing Plaintiff's challenge as one to "further proceedings," arguing that the Memo "assigns to future agency action the very issues Plaintiff wants to litigate now." Defs.' Opp., ECF 36 ("Opp."), at. 22. Not so. The Memo itself is a signed, formal agency decision that is "not subject to further Agency review." *See Sackett v. EPA,* 566 U.S. 120 (2012). Defendants do not contest this. *See* Opp. at 21-24. This suffices to establish final agency action. MOL at 8-10.[2]

Moreover, Defendants concede that the Memo's course of action is already being carried out. *See* Mayhew Decl. ¶¶ 5-6, 8-10; Sept. 8, 2026 Conf. Tr. at 8:2-4. Defendants confirm that USCIS is already developing the Portal "to deliver DHS citizenship data to state election officials[.]" *Id*. This further establishes that the agency action is neither tentative nor interlocutory. *See Center for Taxpayer Rights v. IRS*, 2026 WL 2635380, at *7 (D.C. Cir. Sept. 8, 2026) ("When an agency implements a policy choice, putting it into motion . . . it takes final agency action."); *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 21 (D.D.C. 2026) (USAGM's "continued . . . steps" to

[2] Defendants cite two inapposite, decades-old cases to suggest that not all agency approvals constitute final agency action. In *Chicago & Southern Air Lines v. Waterman,* the Supreme Court considered an agency order that was not final because it required further approval from the President. 333 U.S. 103, 112 (1948). Undisputedly, no further approval is required here. *Georator Corp v. Equal Employment Opportunity Commission*, which predated the standard set out by the Supreme Court in *Bennett v. Spear*, 520 U.S. 154 (1997), concerned a procedural order inviting the parties to engage in mediation that—unlike the Memo here—was "without legal effect," "fix[ed] no obligation," and "impose[d] [no] liability on the plaintiff." 592 F.2d 765, 768 (4th Cir. 1979).

implement a memo were evidence of finality).[3]

**B. The Memo determines rights and obligations, and it has legal consequences.**

Plaintiff establishes the second prong of finality because the Memo carries legal consequences for Plaintiff's members by directing the sharing of their confidential data. *See* MOL at 9-10 (citing cases); *see also Center for Taxpayer Rights,* 2026 WL 2635380, at *10 (IRS disclosure of noncitizen data "reduces noncitizens' privacy rights"). DHS seemingly asserts that, in order to satisfy this prong, a plaintiff must show a "'risk of significant civil and criminal . . . penalties.'" Opp. at 25 (quoting *Cal. Cmtys. Against Toxics v. EPA,* 934 F.3d 627, 637 (D.C. Cir. 2019)). But the cited case says no such thing; it affirms that the relevant inquiry is "whether the action at issue gave rise to direct and appreciable legal consequences," of which civil and criminal penalties are but one form. *Cal Cmtys. Against Toxics*, 934 F.3d at 635 (cleaned up). By requiring DHS to share confidential citizenship information without notice, the Memo *does* effectuate a change in Plaintiff's members' data privacy rights and implicates attendant privacy protections in federal laws like the Privacy Act and Social Security Act, *see* Opp. at 25, and courts have repeatedly recognized this impact as a direct and appreciable legal consequence. *See* MOL at 9-10.

Plaintiff independently satisfies this prong because the Memo confers both rights *and* obligations on DHS.[4] MOL at 8-10. The Memo itself is mandatory: "USCIS must establish the infrastructure to compile, maintain, and transmit State Citizenship Lists, and designate a DHS

[3] Neither the fact that DHS has yet to implement each step in the Memo, nor that unnamed "unresolved contingencies" may later alter its course, insulates the Memo from review. To hold otherwise would shield virtually all agency action from judicial scrutiny. *See Sackett,* 566 U.S. at 127 (the possibility "an agency might reconsider" does not suffice to make an otherwise final agency action nonfinal").

[4] Courts have long rejected Defendants' argument that Plaintiff cannot meet this prong without establishing legal obligations imposed on Plaintiff's members. Opp. at 25. The relevant inquiry is whether agency action "determined its own rights or obligations" *or* "determine[d] Plaintiff's rights or obligations." *Doe v. Tenenbaum,* 127 F. Supp. 3d 426, 461 (D. Md. 2012). Although Plaintiff need only show one or the other, here Plaintiff has shown both.

point of contact for those lists, within the timeframe directed by EO 14399." Implementation Memo at 4. It adopts the legal position that 8 U.S.C. § 1373 "*requires* the creation" of the Portal and *requires* DHS "to respond to federal state and local inquiries to verify citizenship and/or immigration status." *Id.* at 2. And it imposes an "accelerated *mandate*" on USCIS to accomplish these goals. *Id.* at 4.[5] These legal and policy positions, and the attendant obligations they impose on agency officials, "alter the legal regime to which [DHS] is subject," satisfying *Bennett*'s second prong. *Bennett*, 520 U.S. at 178; *see also Philadelphia Yearly Meeting of Religious Soc'y of Friends v. DHS*, 2026 WL 280089, at *3 (D. Md. Feb. 3, 2026) (similar, collecting cases); *Am. Federation of Teachers v. Dep't of Educ.,* 779 F. Supp. 3d 584, 610 (D. Md. 2025) (agency letter imposed "binding" obligations where its text "'commands,' 'requires,' 'orders,' and 'dictates'").

## II. Plaintiff has standing.

### A. EPIC's injury is imminent and substantial.

Defendants have caused or will imminently cause Plaintiff and its members concrete injuries. MOL at 21-28.[6] Contrary to Defendants' arguments, because Plaintiff has established a "material risk" of "imminent and substantial" future injury, this independently suffices to establish standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 415, 435–36 (2021).

There is nothing "hypothetical" about what Plaintiff challenges: the Implementation Memo and the course of action it approves. *See supra* Argument § I. Nor is the imminence of the harm to Plaintiff and its members uncertain: the Memo's timeline requires the "course of action" to be complete before the midterm elections, *see* Implementation Memo, at 1-3, and Defendants

[5] Failure to meet the Portal deadline stems from an injunction; it is not evidence the Memo is not binding. MOL at 7.
[6] Plaintiff has established all three elements of standing. MOL at 28. Defendants do not meaningfully contest causation, instead conflating it with injury-in-fact. *See* Opp. at 6-7 (making some arguments related to Plaintiff's associational voting-related injuries, discussed *infra* Argument § II.B, but generally arguing that "whether considered a problem of injury or causation," Plaintiff's "possible future injuries" are insufficient). And Defendants concede redressability by failing to address it at all. *See Mentch v. Eastern Savings Bank, FSB,* 949 F. Supp. 1236, 1247 (D. Md. 1997) (failure to respond to an argument in summary judgment opposition constitutes abandonment).

confirm it is already being implemented, *see* Mayhew Decl. ¶¶ 5-6, 9-10. Defendants' representations to this Court underscore imminence: Defendants confirmed that they "cannot commit" that the Portal will not "go live" "between now and the elections," and offered no more than 48-hours' notice before it does. Sept. 8, 2026 Conf. Tr. at 6:23-25, 7:1-4, 8:2-4.

In arguing that Plaintiff and its members' injuries are too "speculative," Defendants effectively assert that Plaintiff cannot establish an Article III injury unless and until DHS publicly discloses the State Citizenship Lists or (perhaps) identifies a date-certain for doing so. Opp. at 4-7. If true, such a rule would create perverse incentives for agencies to shield troubling government action from public view.[7] Indeed, Defendants have conceded that one of the few available pieces of information about Defendants' ongoing implementation efforts—a "coming soon" webpage for the Portal, *see* Hill Decl. Ex. Q—was only "mistakenly publicly visible."[8]

Moreover, Defendants also misconstrue the facts and legal standard for injury-in-fact and Plaintiff's allegations. *See* MOL at 10-14. Contrary to Defendants' representations, the Implementation Memo (including its prescribed "course of action") is the "downstream action" that the DHS Secretary has taken to "implement § 2(a)" of the EO—and thus is the very conduct that the Supreme Court explained would be a "true 'source of . . . injury'" in *Trump v. California*. 609 U.S. ----, 2026 WL 2473573, at *1-2 (Aug. 24, 2026) ("*California I*") (quoting *Trump v. New York*, 592 U.S. 125, 133-34 (2020)). Defendants *have already begun* and *are currently* carrying out the course of action approved in the Implementation Memo. *See* Mayhew Decl., ¶¶ 8-10. There is no "long chain of inferences" like the one in *California I*. 2026 WL 2473573, *2.[9]

---

[7] Defendants' failure to meet the Memo's deadlines only exacerbates the imminence of harm as the elections draw nearer. *See DSCC v. Trump*, 2026 WL 2682675, at *11 (D.D.C. Sep. 13, 2026) ("the extremely short timeframe" before the midterms "cuts strongly in favor of" relief).

[8] Defs.' Opp. to Mot. for Disclosure at 11, ECF 195, *DSCC v. Trump*, No. 26-1114 (D.D.C. Sept. 16, 2026).

[9] The Supreme Court's recent decision denying a stay in *United States Postal Service v. California* illustrates the point. 609 U.S. ----, 2026 WL 2687160 (Sept. 14, 2026) ("*Calfornia II*"). *California I* deemed standing insufficient to challenge the 2026 Elections EO itself. 2026 WL 2473573, at *4. But after USPS *implemented* Section 3 by adopting

**B. EPIC has associational standing.**

The Fourth Circuit recently affirmed that an organization can demonstrate injury-in-fact to support a Privacy Act claim for unlawful inter-agency data sharing. *AFSCME v. SSA*, 172 F.4th 361, 365, 371 (4th Cir. 2026) (en banc). Ignoring this controlling precedent, Defendants wrongly assert that EPIC's members' lack concrete privacy injuries. Defendants' claim that inter-agency disclosures do not establish standing because analogous common-law torts required public disclosures is wrong and foreclosed by the same precedent. *See AFSCME*, 172 F.4th at 368-369 (finding standing, analogizing inter-agency disclosure of sensitive data to common-law tort of intrusion upon seclusion); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.). Defendants' arguments also ignore or mischaracterize the facts. It is untrue, for example, that "Ms. Kisselburgh never alleges—and could not allege—that her personal information was disclosed," Opp. at 8. Rather, she alleges that the Memo's course of action will result or has resulted in both interagency and external disclosures. Kisselburgh Decl. at 2–3 ¶¶ 12–17, ECF 7-30. This constitutes injury-in-fact. The analysis could end there.

However, Defendants are also incorrect that EPIC's members' reputational and voting-related injuries are too attenuated, a "generalized grievance," mere speculation that a past wrong will recur, or the result of a third-party act, Opp. at 7-10, for the same reasons explained *supra* Argument § II.A.

Though Defendants argue the voting injuries are not caused by, or traceable to Defendants because they will be caused by state or local officials and not the federal government, they ignore that "Article III 'requires no more than *de facto* causality.'" *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Here, Plaintiff has standing because "'third parties will likely react' to the

---

its rule, standing was sufficient to deny a stay in *California II*. Plaintiff here similarly has standing to challenge the Implementation Memo since it represents DHS's action to implement Section 2 of the EO.

government [action] 'in predictable ways' that will likely cause . . . the plaintiff's injury." *Diamond Alt. Energy, LLC v. EPA*, 60 6 U.S. 100, 112 (2025) (cleaned up). Defendants are working to distribute concededly unreliable citizenship data to state election officials to "*ensur[e]* citizenship verification and integrity in federal elections." Memo at 1 (cleaned up) (emphasis added); 2026 Elections EO; MOL at 4-6 (citing Hill Decl. Exs. G, H, I, N, X). The 2026 Elections EO threatens investigation and prosecution of state and local officials who issue ballots to "individuals not eligible to vote." 2026 Elections EO § 2(b). That states will respond in these circumstances by burdening the voting rights of those (wrongfully) identified as non-citizens is "'predictable,'" and certainly not "conjectural." *League of Women Voters v. DHS*, 2026 WL 2643439, at *5 (D.C. Cir. Sept. 4, 2026) ("*LWV II*") (finding voter standing in similar challenge to DHS's disclosure of unreliable SSA citizenship data to states). Nor is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a bar, as it is inapplicable to allegations of "systemic policy failures." *Jonathan R. ex rel. Dixon v. Morrisey*, 178 F.4th 139, 163-64 (4th Cir. 2026), *petition for cert. filed*, No. 26-297 (U.S. Sep. 8, 2026). Plaintiff challenges a *systemic policy*—Defendants creating and distributing unreliable State Citizenship Lists—causing ongoing and imminent harm. Defendants do not dispute that their efforts are "ongoing," *see id.*, that such inter-agency disclosures may recur, or that they intend to distribute State Citizenship Lists before the election. *Lyons* is therefore inapposite.

**C. EPIC has informational standing.**

For the reasons already discussed, EPIC has met both prongs of the test establishing informational standing. *Supra* Argument § II.A, *infra* Argument §§ III.A, III.C; MOL at 26-27 (citing *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017)).[10]

[10] Plaintiff's Motion established that "EPIC has procedural standing because Defendants' violations of the Privacy Act's notice-and-comment requirements impair the above-described "concrete interest[s]" that the Act "was designed to protect." MOL at 27. Defendants ignore – and therefore concede – the substance of this argument. *See Mentch,* 949 F. Supp. at 1247.

Defendants contest both prongs of this standard based on the same selective reading of the statute and its purpose. As to the first prong, Defendants erroneously assert that because the Privacy Act provides a specific right of action to individuals, it provides an entitlement to *information* "only to individuals." Opp. at 12. As Plaintiff discusses at length in demonstrating it is within the law's zone of interests, *see infra* III.C, this is untrue. As to the second prong, Defendants narrowly argue that because provisions of the Privacy Act protect *against* disclosure, its underlying purpose is not to provide information to the public. Opp. at 12-13. Defendants ignore, however, that "[t]he Privacy Act's public notice and comment structure" *demands* disclosures from the government via SORNs and "is an essential component of the Act and an essential piece of American democracy." *League of Women Voters v. DHS*, 835 F. Supp. 3d 79, 129 (D.D.C. 2026) ("*LWV I*"), *stay denied*, 2026 WL 2643439 (D.C. Cir.), *app. for stay filed*, No. 26A308 (U.S. filed Sept. 8, 2026); *see also infra* § III.C. Defendants' cited authorities arise under the Act's individual-access provision; they cannot undermine the separate statutory purpose and requirement on which Plaintiff relies, requiring that that agencies publish SORNs; nor do they negate that Defendants' actions have caused EPIC precisely the types of harm Congress aimed to prevent in enacting the Privacy Act. *See* MOL at 10-14, 26-27; 5 U.S.C. §§ 552a(e)(4), (e)(11).

**D. EPIC's claims are ripe.**

Defendants' own evidence refutes their assertion that "implementation of the E.O.'s Section 2(a) has not yet occurred." *See supra* §§ I, II.A. Plaintiff's claims are ripe, live, and urgent.

Plaintiff satisfies both the fitness and hardship prongs of the ripeness doctrine. *Contra* Opp. at 13-15 (citing *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 149 (1967)). In asserting that the issues are not "fit for judicial decision," Defendants ignore that this factor is "easily satisfied" because Plaintiff's Motion "presents [] issue[s] that [are] 'purely legal, and will not be clarified by further factual development.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (citation

omitted). By Defendants' logic, Plaintiff's claims would only be "ripe" at so late a stage that no judicial review could be meaningful. Plaintiff also satisfies the second prong, "the hardship to the parties of withholding court consideration." *Abbott Lab'ys*, 387 U.S. at 149. *See* Sept. 8, 2026 Conf. Tr. 11:19-23 (deciding "this really important issue" is time-sensitive, especially if Defendants "can't commit that this portal will not go live before the elections").

## III. The Memo violates the Privacy Act and Social Security Act (Counts II, III, IV).

### A. Defendants do not dispute the Memo's substantive statutory violations.

Defendants' opposition is built almost entirely on the invocation of ripeness, finality, and the Memo's saving clause—arguments that all fail, *see supra* Argument §§ I, II.A, II.D. Thus, when Defendants finally arrive at the merits, they do not seriously contest that the Social Security Act's confidentiality protections apply on the facts here, *compare* Opp. at 27-28 *with* MOL at 16-17;[11] that no operative SORN authorizes the Memo's approved course of action, *see* MOL at 14, Opp. at 22-23, 26-27; that the deferral of the transparency and redress function violates the procedural requirements of the Privacy Act, MOL at 14-15; or that the Memo's course of action violates the Privacy Act's restrictions on disclosure, *id.* at 15-16.[12]

Defendants instead ask this Court to assume the Implementation Memo's lawfulness rather than defend it, arguing that the boilerplate savings clauses in the 2026 Elections EO and Memo insulate them from judicial review. Opp. at 22-24. This argument is unavailing: An agency's promise to comply with the law is not proof that it has. Here, the Implementation Memo's "command to 'follow the law' . . . 'cannot immunize [the Memo] from scrutiny.'" *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 437 (D. Md. 2025) (quoting *HIAS, Inc. v. Trump*, 985 F.3d 309, 325

[11] After Plaintiff filed its motion, the D.C. Circuit denied the government's motion for a stay pending appeal in *LWV II* including because DHS had "not made a strong showing" that the SSNs and "related records" it "disclose[s] through modified SAVE fall outside § 405(c)(2)(C)(viii)(IV)" of the Social Security Act. *LWV II*, 2026 WL 2643439, at *12.

[12] Defendants incorrectly cite the arbitrary-and-capricious claims review standard, inapplicable here. Opp. at 3-4, 20.

(4th Cir. 2021)). Further, the Memo is facially inconsistent with the saving clause, "unambiguously 'command[ing] action that a saving[] clause purports to negate,'" meaning the Court "must ignore the saving clause and read the [Memo's] operative provision to mean what it says." *LULAC v. EOP*, 780 F. Supp. 3d 135, 176 (D.D.C. 2025).

A litigant's reliance on a saving clause is not a substitute for legal authority. *Id.* at 186 ("It is no answer to [a] facial challenge to say that the saving clause requires the [agency] to follow the law while following" an order lacking statutory authority). Defendants had every opportunity to show that the Memo and its approved course of action fall within an existing SORN, otherwise comply with the substantive and procedural requirements of the Privacy Act, or that the Social Security Act's protections are satisfied. They made no such attempt. That silence is a concession. *See Mentch*, 949 F. Supp. at 1247.

**B. APA review and relief are available for Defendants' Privacy Act violations.**

Fourth Circuit authority—which Defendants do not address[13]—recognizes that "injunctive relief for a Government's violation of the [Privacy] Act will instead be appropriate and authorized by the APA" precisely because the Act's own remedial provisions do not encompass prospective relief for most violations. *Doe v. Chao*, 435 F.3d 492, 505 n.17 (4th Cir. 2006); *see also Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004) (attributing the Privacy Act's "inattention" to equitable-relief standards to the availability of the APA's "general provisions for equitable relief"); MOL at 10 n.4.[14] The Privacy Act offers only post-hoc, individualized compensation for *disclosure*—a remedy that is entirely inadequate where Plaintiff challenges an unlawful nationwide data-sharing

[13] Tellingly, Defendants' opposition also does not cite, let alone attempt to distinguish *League of Women Voters v. DHS*, even though that court confronted the identical question presented here, and held that APA review is available for Privacy Act procedural and disclosure violations arising from interagency sharing of citizenship-verification data. *See* MOL at 10 n. 4 (citing *LWV I*, 835 F. Supp. 3d at 120-123).

[14] Defendants' statement that *Doe v. Chao* was "not brought under the APA," Opp. at 17 n.1, is irrelevant to the Fourth Circuit's holding as to APA availability; it reflects only that the plaintiff in that case chose a different vehicle.

regime that will be deployed imminently against millions of Americans and in violation of the Privacy Act's notice-and-comment provisions. *See generally* MOL at 10-16. Defendants offer no meaningful argument to the contrary. Opp. at 16. Prospective, systemic relief vacating Defendants' scheme—which the APA alone provides—is the only adequate remedy in this case.

While the Privacy Act *can* preclude APA suits, Defendants ignore that this is only when they "duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The Supreme Court has made clear that APA Section 704's "adequate remedy" exception exists only to avoid duplication where Congress has provided an equivalent review mechanism; it is not a broad license to funnel APA plaintiffs into an inferior remedy, *id.* at 904, or overcome the "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986).

Defendants' authorities involve a common fact pattern absent here: a plaintiff attempting to use the APA's general cause of action to obtain a remedy that a more specific statute provides.[15] Plaintiff's Counts III and IV do none of this. Defendants' precedents therefore "are inapplicable to the statute's procedural requirements . . . and to forward-looking remedies to enforce the statute's disclosure provisions . . . for which the Privacy Act does not offer relief of the same genre." *LWV I*, 835 F. Supp. 3d at 120–21 (cleaned up). "[T]he absence of equitable relief for these claims in the Privacy Act's judicial review provisions is easily explained by the availability of such relief under the APA." *Id*. at 121 (cleaned up).[16]

Finally, Defendants are wrong that Congress intended to preclude APA review of Privacy

[15] *Westcott v. McHugh*, the only Privacy Act case Defendants cite, involved a plaintiff seeking *damages*—i.e., the remedy available under the Privacy Act—relabeled as APA relief. 39 F. Supp. 3d 21, 33 (D.D.C. 2014). And in *Block v. Cmty. Nutrition Inst.,* the Supreme Court held that, as Congress had established a complex regulatory scheme governing milk markets and their participants, it intentionally omitted consumers. 467 U.S. 340, 345-48 (1984). Consumers thus could not circumvent the bar on their participation in the regulatory process via the APA.

[16] Defendants' reliance on the specific-versus-general canon, Opp. at 15-16, is inappropriate for the same reasons. *See Bowen*, 487 U.S. at 903-04.

Act claims. Opp. at 17. To the contrary, OMB's contemporaneous 1975 Privacy Act guidelines recognize that "an individual may have grounds for action under other provisions of the law in addition to those provided" by the Privacy Act, including "seek[ing] judicial review under other provisions of the Administrative Procedure Act." OMB Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28949, 28968 (July 9, 1975), https://perma.cc/776J-4L46.[17]

**C. EPIC is within the Privacy Act's zone of interests.**

Citing no relevant authority, Defendants wrongly claim that EPIC falls outside of the Privacy Act's "zone of interests" because it is an organization rather than an individual. Opp. 10-12. But courts have held that "organizations like" EPIC *are* within the statute's "zone of interests" and "have prudential standing to bring a Privacy Act-based APA claim." *AFL-CIO v. Dep't of Lab.*, 778 F. Supp. 3d 56, 82 n.15 (D.D.C. 2025) (citing *AFSCME v. SSA*, 771 F. Supp. 3d 717, 793-95 (D. Md. 2025)).[18] This conclusion follows from the Privacy Act's plain text, which makes clear that organizations like EPIC are among the statute's intended beneficiaries. The Act contains transparency measures that require agencies to publish new or modified SORNs in the Federal Register so that "interested *persons*" may "submit written data, views, or arguments to the agency." 5 U.S.C. § 552a(e)(4), (11) (emphasis added). The Privacy Act defines "person" to include any "public or private organization other than an agency." *Id.* § 551(2). Thus, by its terms, the Act demands that agencies provide "interested persons" like EPIC information sufficient to inform their comments on SORNs.

The legislative history confirms that, beyond protecting individual privacy, the Act "also intends to make available to the press and public all possible information concerning the operations

[17] In later amendments to the Privacy Act, Congress demonstrated that when it wants to make the Act's remedies exclusive, it does so expressly. *LWV II,* 2026 WL 2643439, at *9.

[18] Even if successful, these arguments have no bearing on Counts I and II of the Complaint, which do not depend on violations of the Privacy Act. *See* Compl. ¶¶ 130-37; *id.* ¶¶ 138-49.

of the Federal Government in order to prevent secret data banks and unauthorized investigative programs on Americans." S. Rep. No. 93-1183, at 71 (1974); *see also* Legislative History of the Privacy Act of 1974, Source Book on Privacy, at 217 (1976), https://perma.cc/9W9F-R5ZL (the Act intends to "assure knowledge by . . . interested groups of . . . centralized data systems").

## IV. The Memo exceeds DHS's statutory authority (Count I).

Defendants lack statutory authority for the Implementation Memo. They gesture at 8 U.S.C. § 1373, but both the statutory text and case law foreclose reliance on this provision. As Plaintiffs have observed, Sections 1373(a)-(b) cannot grant the necessary authority because these provisions only set forth negative prohibitions, not any affirmative authority. MOL at 17-21; *see also LWV I*, 835 F. Supp. 3d at 135–36 ("Simply put, Section 1373(a) does not on its own authorize the establishment of [a modified system of records]—it is merely a prohibition on conduct.").

Meanwhile, Section 1373(c) merely requires DHS to "respond to an inquiry" by providing *the agency's own data* about citizenship status. The statute in no way authorizes DHS to create a sprawling master database of U.S. citizens that enables bulk disclosure of millions of Americans' sensitive personal data across thousands of federal, state, local, and even non-governmental entities, nor does it override pre-existing statutory restrictions on disclosure. *See LWV II*, 2026 WL 2643439, at *8 ("A general duty to answer a citizenship inquiry under 8 U.S.C. § 1373(c) does not by itself authorize disclosure of information that another statute . . . specifically makes confidential."). Defendants have not attempted—and have forfeited their right—to address the decision in *LWV I*, acknowledge the major questions doctrine, or identify any other source of statutory authority. *See Mentch*, 949 F. Supp. at 1247.

Instead, Defendants try to divine the necessary statutory authority by eliding distinctions in Section 1373's text. They contend that "Section 1373(c) . . . unambiguously requires, and so authorizes, DHS to 'verify or ascertain the citizenship or immigration status of any individual.'"

Opp. at 28. But that is not what the text says. The language Defendants cite as authorization does not require or authorize DHS to verify anything at all. Instead, it says DHS "shall *respond*" to an inquiry from a "*Federal, State, or local government agency*" that is *itself* "seeking to verify or ascertain the citizenship or immigration status of any individual[.]" 8 U.S.C. § 1373(c) (emphasis added). Defendants seek to extend the "verification" language to DHS itself, suggesting that it gives the agency freewheeling authority "to verify or ascertain" citizenship status however it deems proper, without any inquiry from states, including by affirmatively compiling data from across federal agencies into master citizenship lists. Yet Section 1373 never references any DHS authority "to verify or ascertain" citizenship using other agencies data. That Defendants' reading requires transposing statutory text underscores its invalidity.

Defendants suggest that Section 1373(b)'s caption, "Additional authority of government entities," authorizes the Memo's course of action. Resort to the caption is another interpretive red flag. *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014) (captions "are but a short-hand reference to the general subject matter' of the provision, "not meant to take the place of the detailed provisions of the text") (cleaned up). Again, the content of Sections 1373(a) and (b) is prohibitory and authorizes nothing affirmatively. Defendants argue that Sections 1373(a) and (b) "necessarily presupposes that DHS possesses the authority to send and receive" citizenship information. Opp. at 29. But this gets the analysis backward. Agencies do not derive authority to act through "presupposition."[19] "If no statute confers authority to a federal agency, it has none." *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390, 399 (D.C. Cir. 2021).

Defendants point to no source for the sweeping authority they assert beyond an apparent

---

[19] It is far more consistent with the statutory scheme, purpose, and relevant jurisprudence that Sections 1373(a) and (b) merely cross-reference Section (c)—*i.e.*, if a State contacts DHS to verify an individual's citizenship status, Sections (a) and (b) prohibit obstructing DHS from responding with *its own* information about the individual. *See* MOL at 17-21.

"presupposition" in Section 1373, because there is none. Congress would have spoken clearly if it intended this dangerous result, allowing DHS to bypass several federal laws to take seemingly any action relating to "citizenship and immigration status" data. It did not. *See* MOL at 17-21.

## V. Plaintiff is entitled to its requested relief.

The Implementation Memo and the course of action it approves should be vacated and set aside.[20] Under the APA, "vacatur is the only permissible remedy when [an] agency decision is contrary to law." *Sierra Club v. Nat'l Marine Fisheries Serv.*, 797 F. Supp. 3d 440, 493 (D. Md. 2024). Defendants incorrectly suggest that if this Court finds an APA violation, the "only proper relief . . . is a remand" to DHS "for further explanation or other action." Opp. at 29. That is not the law. *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018) (Fourth Circuit has not "embraced . . . remand-without-vacatur," a minority approach).[21]

Here, should the Court find that vacatur does not provide complete relief, MOL at 29-30, a permanent injunction is warranted to forestall injury from the distribution and misappropriation of sensitive personal information. *See DSCC v. Trump*, 2026 WL 2681471, at *11 (D.D.C. Sept. 13, 2026) (providing complete relief to plaintiffs by enjoining USPS from enforcing promulgated rule). Finally, Defendants have not addressed—and have forfeited the right to contest—the propriety of a declaratory judgment. MOL at 30.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment should be granted.

---

[20] This Court has already considered and rejected Defendants' arguments that summary judgment is procedurally improper at this stage. Sept. 8, 2026 Conf. Tr. at 16:13-21 (denying Defendants' motion for reconsideration). Defendants cite no case law for this renewed argument and do not attempt to meet the standard for this Court to *again* reconsider its prior decision. *See, e.g.*, *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

[21] For courts that do permit remand, it "is relevant in matters where agencies have inadequately supported rules." *Sierra Club*, 909 F.3d at 655. Remand is irrelevant where, as here, agency action is contrary to law and ultra vires.

Dated: September 17, 2026

Respectfully submitted

/s/ Nikhel S. Sus
Nikhel S. Sus (Bar No. 31090)
John B. Hill*
Reuven Dashevsky*
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
rdashevsky@citizensforethics.org

R. Orion Danjuma*
Julia L. Torti*
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
orion.danjuma@protectdemocracy.org
jules.torti@protectdemocracy.org

Sara Chimene-Weiss*
PROTECT DEMOCRACY PROJECT
7000 N. 16th Street, Suite 120, #430
Phoenix, AZ 85020
(202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Jane Bentrott*
Shelby Teeter*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite #163
Washington, DC 20006
(202) 579-4582
jane.bentrott@protectdemocracy.org
shelby.teeter@protectdemocracy.org

John Davisson**
Mayu Tobin-Miyaji*
ELECTRONIC PRIVACY INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, D.C. 20036
(202) 483-1140
davisson@epic.org
tobin-miyaji@epic.org

*Counsel for Plaintiff*

* Admitted *pro hac vice*
** *Pro hac vice* motion filed